## TILLIE STEEN v. LAURIE FRIEND.

1. DEFENDANT'S WEALTH IN LIBEL OR SLANDER.

   In an action for libel or slander, the wealth of the defendant, at the time of the alleged libel or slander, may be shown for the purpose of increasing the compensatory damages and as bearing upon exemplary or punitive damages.

2. DEFENDANT'S WEALTH IN LIBEL OR SLANDER—EVIDENCE OF.

   While evidence of defendant's wealth, in an action for libel and slander, to be in proper order, should be given as part of plaintiff's testimony, it is not error, after plaintiff has rested without introducing any such evidence, to permit cross-examination of the defendant on that subject.

3. IMPEACHING EVIDENCE - PETITION IN ANOTHER SUIT.

   In an action for libel and slander, based upon words spoken and a letter written, charging plaintiff with improper relations with defendant's husband, a petition for divorce, filed within a week after the domestic difficulties involving the action for libel and slander, brought by defendant in the libel and slander suit, and based upon charges of cruelty, and in which no charge is made concerning the intimacy alleged in answer to the suit for libel and slander, is admissible as tending to impeach the defendant's statements charging such intimacy.

**4. LIBELOUS PUBLICATION IN FORM OF A LETTER.**

A letter to a young woman's father, stating: "I will write you concerning L. I wish you would come out here and take her home as she has caused me a great deal of trouble, so much so that she has separated me and my husband and she is still staying with him alone. Please come at once. My husband has treated me shamefully through her and driven me and my children away from home for her sake. * * * I have caught them in a room together talking about me and now she has got him so far gone on her that I and the children are driven out and she has taken my place," if false and unless a privileged communication, is libelous. (The question of privilege not decided, but the court held that the communication could not, in any event, be subject to more than a qualified privilege.)

**5. DEFENSE OF PRIVILEGE MUST BE PLEADED.**

To make the defense that a writing, libelous on its face, is privileged, that defense must be pleaded and the facts constituting the privilege set forth in the answer, issue joined and submitted to the jury.

**6. MISCONDUCT OF COUNSEL—PREJUDICIAL ERROR.**

In an action for libel and slander, in which evidence was permitted concerning defendant's application for divorce, growing out of the same domestic difficulties involved in the libel and slander suit, a statment by counsel for plaintiff to the jury after having asked defendant "how many hundred dollars did he pay you the last time you filed a case against him?", to which objection was interposed, that, "he paid her $2,800," where the record does not disclose any evidence in support of such statement, should have been ruled from the jury and a refusal, upon defendant's motion, to take such action constitutes prejudicial error.

**7. CHARGE TO JURY—INCOMPLETE—NOT ERRONEOUS.**

Failure to instruct the jury, in an action for libel and slander, upon the question of punitive and exemplary damages, allowance of attorney fees, character of plaintiff and some other things which might properly have been discussed in the charge, is not reversible error where no requests for further instructions were made and no exceptions were taken except to the charge as a whole.

**8. BAD CHARACTER OF PLAINTIFF—VERDICT.**

The bad character of plaintiff, in an action for libel and slander, while it might have a bearing in mitigation of damages, is not a complete defense and is not sufficient ground upon which to disturb a verdict for the plaintiff returned by a jury after due consideration of all the facts.

HEARD ON ERROR.

HULL, J. (orally.)

This is an action for slander and libel brought by the defendant in error, who was plaintiff in the court of common pleas, against the plaintiff in error, for certain alleged slanderous words and an alleged libel, which the plaintiff claimed was uttered and published in the form of a letter written by the plaintiff in error.

The petition alleges that in the month of August, 1898, the plaintiff in error, defendant below, uttered certain slanderous language, falsely and maliciously, in regard to the defendant in error, to wit: that she charged her with committing adultery with the husband of the plaintiff in error and with having sexual intercourse with him, and with going out buggy riding with married men; that she called her a common prostitute, and used other language, as set forth in the petition, imputing a want of chastity to the plaintiff below; and in her second cause of action she charges that the defendant below wrote a certain letter about the same time, August, 1898, charging the plaintiff with committing adultery with Mrs. Steen's husband and driving the plaintiff in error, defendant below, out of her house, and the letter is alleged to contain other language, set

forth in the petition, substantially charging the plaintiff below with having driven Mrs. Steen out of house and taking her place in the family.

The defendant filed an answer in which she denied uttering the slanderous words, admitted writing the letter as charged in the petition, but denied that the letter was false or contained anything untruthful or was in any manner libelous or defamatory.   The case came on for trial upon these issues and a verdict was returned in favor of the plaintiff for three hundred and twenty five dollars.   A motion for a new trial was filed, overruled and judgment entered, and error is prosecuted in this court to reverse that judgment.

There are various things complained of here as error.   It is claimed that the verdict was against the weight of the evidence and that a new trial should have been granted upon that ground.   It is claimed that the court erred in admitting certain evidence, against the defendant below; that the court erred in its charge to the jury, and in not charging fully enough upon the issues in the case; and it is further claimed that the court erred in refusing to rule from the jury a statement made by counsel for plaintiff below during the progress of the trial, while the evidence was being admitted.

It is urged that the court erred in permitting counsel for plaintiff, during the trial, to cross-examine the defendant when she was upon the witness stand as to her property, and quite a number of objections and exceptions appear in the record as to this kind of testimony.   Several of the questions appear upon page 46 of the bill of exceptions.   Defendant was asked how many acres of land she owned, and she answered " forty." And " How many oil wells?" Answer : " Two." And " Is there any incumbrance or mortgage on it ? " Answer : " No." Have you any money in bank?" Answer : " No."

And she was asked what she was worth in money and lands and in regard to her income and farm.   All these questions were objected to and upon the objection being overruled, an exception was entered.

There had been no evidence offered by the plaintiff, in putting in her case, upon the wealth of the defendant and it is insisted that if the plaintiff wished to go into this, that the proper time was when she was offering her testimony, and that it was error after the plaintiff had rested and the defendant had offered herself as a witness, to permit this cross-examination.

There is no question, under the authorities in this state, but that the wealth of the defendant may be shown in an action for libel or slander.   The wealth of the defendant at the time the alleged slander or libel was committed may be shown, as the Supreme Court says, for the purpose of showing the standing of the defendant in the community and increasing the compensatory damages that the plaintiff in a slander or libel suit would be liable for ; it being presumed that a person of wealth would have more influence and do more to damage the plaintiff than some impecunious person, and for that reason, his wealth, at the time the slanders were uttered, or his reputed wealth, may be shown by reputation.   The defendant's reputed wealth may be shown as bearing upon the question of compensatory damages, and there is no question but that the wealth of the defendant at the time of trial may be shown as bearing upon the question of exemplary or punitive damages.   And there is, of course, no question that in an action for libel or slander, punitive or exemplary damages may be returned by the jury as a part of

their verdict, and they are permitted, upon the ground that in such an action it is proper for the jury, within its sound discretion, to punish a defendant for misconduct, and in connection with this, the authorities permit the wealth of the defendant to be shown in order that the jury may know what his wealth is and whether a small amount will be any punishment to him or not.

The case of Hayner v. Cowden, 27 Ohio St., 292, is directly in point upon this question. The court say upon page 296: "Against the objection made, the plaintiff offered evidence of the wealth of the defendant, and in the charge the court said this evidence might be considered in connection with the question of exemplary damages. We see no error in the admission of the evidence, or the charge of the court upon the subject. That punitive or exemplary damages in a proper case may be given, is not an open question in Ohio. In Roberts v. Mason, 10 Ohio St., 277; Smith v. P. F. W. & C. R. R., 23 Ohio St., 10, the court allowed the jury to consider the wealth of the defendant in connection with the question of punitive damages. If, then, punishment be an object of a verdict, a small sum would not be felt by a defendant of large wealth. The vengeance of the law would scarcely be appreciated, and he could afford to pay and slander still. There are cases which put the admission of the evidence upon this ground. Alpin v. Morton, 21 Ohio St., 536, intimates that the reason is to enable the jury to determine how much plaintiff has been injured."

It being competent for the plaintiff to prove this in making out her case, the question of the wealth of the defendant was one of the proper issues in the case, and the defendant, when she went upon the stand, might have testified upon that question, for it was proper for the plaintiff to go into it, and in our judgment it was not improper for the plaintiff to cross-examine the defendant. Although plaintiff failed in making out her case to go into it, nevertheless it was proper testimony for the plaintiff, and the only objection would be that the testimony was not offered in its proper order. The defendant was put upon the stand by the plaintiff when she was offering her testimony and cross-examined about this letter, and it was within the discretion of the court to permit testimony in behalf of the plaintiff after the plaintiff had once rested, and without passing directly upon the question whether it would have been proper for the defendant to have shown her lack of wealth and therefore proper for counsel to have cross-examined her upon this, it is certainly clear that this was proper testimony for the plaintiff, and it was not error for the court to admit the testimony, even though out of order. So that so far as the admitting of this testimony was concerned, we see no error in the ruling of the court.

It is complained that the court erred in admitting a certain petition for divorce, that had been filed by the defendant below against her husband soon after the utterance of these alleged slanderous words, and in considering that question, it will be necessary to briefly state the facts out of which this action for slander and libel grew.

It appears from the evidence in the case, that in August, 1898, plaintiff below was living as a domestic in the house of Mr. and Mrs. Steen, and Mr. and Mrs. Steen having quarreled, having had some trouble perhaps, in regard to his attentions to the plaintiff below, Mrs. Steen, charging him with coming home with her late at night, she (Mrs. Steen) left the house and stayed away over night and came back next day, and one thing she is charged with, relates to what she claimed she discovered

when she came back, to-wit: that her husband and Miss Friend had been occupying the same bed, from the evidences. she saw of two persons having occupied the bed. All of these utterances grew out of the relations of her husband with Laurie Friend.

The defendant claimed at the trial that her husband had had improper relations with Laurie Friend and she testified to what she had seen and heard that led her to believe that that was true, and she set up in her answer, that what she stated in her letter was true, to-wit: that this girl had driven her out of her house, and that she had taken her place in the family, and that " her husband is gone on her," that being one of the expressions used in the letter.

Now a few days after this trouble, and a few days after she had claimed her husband had intercourse with Laurie Friend, she filed this petition for divorce and in that peittion no charge is made against her husband with reference to Laurie Friend. She charges her husband with extreme cruelty, but no charge is made as to Laurie Friend, and in our judgment it was competent on that ground to admit this petition, for the reason that while she claimed that there had been improper conduct between Laurie Friend and her husband, she immediately filed a petition for divorce and made no averment in the petition in regard thereto, and it might tend to impeach her upon her charge that she had observed improper things between her husband and Laurie Friend. Her silence in this petition, filed in court during the same week, would tend to impeach her statement, and on that ground if no other, we think it was proper for the court to admit this petition, that was filed at that time against her husband and which contained no reference to Laurie Friend or any misconduct between Laurie Friend and her husband.

The divorce suit came along soon after this alleged slander and is connected with it in such a way that it is impossible to separate them, and so she was cross-examined somewhat along the line as to whether or not she was not in the habit of suing her husband for divorce, and in this connection the petition was offered in evidence, and in our judgment, there was no error in the court in admitting it.

The charge of the court which is objected to, is quite brief and there were some questions in the case that were not touched upon by the court. Questions of punitive and exemplary damages, allowance of attorney fees, character of the plaintiff and some other things that might properly have been discussed by the court in his charge to the jury were not touched upon in the charge, but no request was made by the defendant below for any further instructions. The defendant, apparently, was satisfied with the charge and the only exception to it was the exception to the charge as a whole. Now, we think that if the defendant desired further instruction upon these questions she should have requested it of the court. The defendant may have been willing to have the case go to the jury without any instruction upon these questions. She may not have cared to have the court instruct the jury upon the questions of punitive or exemplary damages, which the court might have touched upon, and the defendant asked for no further instructions, and in our judgment it could not be held to be prejudicial error against the defendant that the charge of the court was not as full as it might have been. To have reached this question the defendant should have requested further instructions from the court.

There was quite an amount of testimony put in by the defendant below upon the character of the plaintiff, and it is claimed that the judg-

ment should be set aside because of the bad character which it is claimed this testimony established on the part of the plaintiff below, and for that reason the verdict was against the weight of the evidence or at least excessive; but that question was submitted to the jury : the parties were before the jury, and they saw the witnesses that testified as to the character of the plaintiff, and while this might go in mitigation of damages, it would not be a complete defense, if the words were in fact uttered and were in fact false, and we see no reason to disturb the verdict on that ground.

It is claimed that the letter which was written by Mrs. Steen was a privileged communication, and that, therefore, no damages could be allowed on that account, and that it was not proper to be taken into account, and that it was not proper to be taken into consideration by the jury, under all the circumstances of the case ; that it was privileged and that the court should have so held. It appears that after this quarrel between Mrs. Steen and her husband, in which she charged him with being out with this girl at night, she left the house and came back the next day and claimed that there were evidences that her husband and Laurie Friend had occupied the same bed, and soon after that she wrote this letter, which was enclosed in a letter addressed to the postmaster, requesting him to deliver it to Laurie Friend's father.

The letter is not very long and is as follows :

"Portage, Ohio, August the 4, 1898.

"My Friend: I will write you Concerning Laurie. I wish you would Come out here and take her home as she has caused me a great deal of trouble so much so that She has seperated Me and my husband and she is still Staying with him Alone. Please come at once. My husband has treated me shamefully through her And driven me and my Children away from home For her sake. I told her I would inform her folks of her conduct and she said she would have me arrested if i did. I have caught them in a room together Talking about me and now she has got him so far gone on her that i and the children are driven out And she has taken my Place. O it is hard to bear, it is Killing me to think of it. We had trouble before but Nothing like this. Please come as soon as possible and look after her and very much oblige

"Mrs. Tillie Steen."

The letter, in our judgment, would be a libelous publication if it is not privileged. Language may be libelous and actionable *per se*, that would not be slanderous *per se*. If it is such language as to bring one into disrepute, ridicule and contempt in the neighborhood it may be libelous : but this language, in this letter, substantially charges her with having crowded this man's wife out of the house and taken her place in the house and living there with her husband, and that she had " got him so far gone on her that she and the children were driven out," that is, he was infatuated with her, and, on the whole, in our judgment, the letter would be libelous published against a woman, if false.

Now can the defendant avail herself of the claim that it was a privileged communication ? We do not deem it necessary to determine whether the letter was in fact privileged or not. This defense was not pleaded in the answer but the allegations in the answer simply are, after admitting that the letter had been written, that the statements con-

Steen v. Friend.

tained therein were not untruthful and false, and that the letter contained nothing untruthful or libelous.

To make the defense that a paper writing, libelous upon its face, is privileged, it must be pleaded, and the facts constituting the privilege must be set forth in the answer, in order that the plaintiff may be advised of the defense, and the issue is for the jury. The privilege claimed here would only be a qualified privilege at most, and if the letter was uttered maliciously, the privilege would not avail. The Supreme Court say in Post Publishing Co. v. Moloney, 50 Ohio St., 71, in the second paragraph of the syllabus, "Where the defense to an action for libel is, that the publication was privileged, and issue is joined upon the allegations of fact on which the alleged privilege depends, the issue is for the jury, and a refusal to instruct them that the publication was privileged, is not error."

So that where privilege is claimed the facts must be pleaded and issue must be joined between the parties, and those issues of fact are to be submitted to the jury. The court say, on page 84 of the opinion, in discussing this question briefly : "Writers upon the subject, include all privileged publications within two classes : those which are absolutely privileged, and those in which the privilege is but qualified. There are not many of the first class, nor is it desirable there should be." And after discussing that, on page 85, they say : " It is not contended that the publication in question was one of absolute privilege; and the facts which the defendant claims made it one of qualified privilege not appearing in the petition, it became necessary to plead them by way of defense. They were so pleaded in the second defense of the answer, and were put in issue by the reply ; and being so in issue, it was not within the province of the court to instruct the jury, that the publication was privileged, without regard to what the proof before them might be, or how they might find upon those issues."

That is sufficient to dispose of this question as to whether the letter was a privileged communication either absolute or qualified. The fact that the alleged privilege was not pleaded and the issues made up upon that question, take it out of the case, and therefore there was no error so far as this ruling of the court is concerned.

It is further claimed that there was error in the action of the court in refusing to rule out a statement of counsel made during the trial of the case. In the cross-examination of the defendant below, counsel for plaintiff asked her in regard to one of these quarrels with her husband :

" Q. What did your husband say?" Answer. " He said the same; of course he was under the influence of liquor or he would not have said so."

" Q. He is a real nice affectionate husband he is. How many hundred dollars did he pay you the last time you filed a case against him? (Defendant objected.)

Mr. Emsly to the jury : " He paid her $2,800."

Then the record contains this : "Defendant moved the court to strike from the jury the remarks made by Mr. Emsly; motion overruled and exception."

Mr. James : " Mr. Emsly has said that Mr. Steen gave Mrs. Steen $2,800 in settlement of the divorce case. To that we object and ask the court to charge the jury that they have no concern in any statement of

Mr. Emsly's relative to $2,800 or any other matter, and I now ask the court to charge the jury to that affect."

This the court refused to do, and an exception was taken.

It is claimed that the court erred in refusing to rule from the jury this statement that had been made by counsel to the jury. The record does not disclose that any evidence was offered tending to show that Mrs. Steen's husband gave her twenty-eight hundred dollars or any other sum upon the occasion of her filing an action against him for divorce.

After this action was taken by the court no further questions were put to her along that line and the record was left in that condition. Now the question is squarely made here. Counsel for Mrs. Steen not only objected to the statement made, which objection was overruled by the court, but formally moved the court to charge the jury and say to the jury that they should not regard this statement, and the court overruled this motion of counsel. That this statement was made to the jury, the record affirmatively shows; that the court refused to take it from the jury and instruct them not to consider it upon formal and express motion to that effect, the record affirmatively shows; the record shows *all* that was said, both by counsel and court.

If plaintiff was bringing actions against her husband for divorce for the purpose of getting money out of him, as this statement would seem to indicate, that would have a tendency to prejudice her case with the jury, and perhaps very materially, as this action for slander was closely associated with the divorce case. The statement was made directly to the jury by counsel for plaintiff; not in argument; not as a conclusion, but as a statement of absolute fact which was not supported by any testimony, and the statement remained with the jury with the apparent approval of the court after a motion had been made to rule it out. One of the things that Mrs. Steen complained of was that she was driven from her home by the plaintiff, and that she had been crowded out, and that plaintiff had taken her place in the family. If it was true that she had made twenty-eight hundred dollars by the filing of a former action for divorce against her husband, that would tend to show that her leaving home was perhaps for the purpose of getting more money out of her husband and that she did not leave for the reasons she gave, but that she was filing one suit after another against her husband for the purpose of making money, and the statement going to the jury in this way, with the apparent approval of the court, probably was prejudicial, and perhaps very prejudicial to the defendant below, under all the circumstances.

In our judgment the court erred in refusing to rule this statement from the jury, after attention was directly called to it and the action of the court expressly invoked; and being of the opinion that the court erred in this respect, and that the error was prejudicial to the defendant below, the judgment must be reversed and the verdict set aside, and the cause remanded for a new trial.

*James & Beverstock*, for plaintiff in error.

*B. Emsly*, for defendant in error.